IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| TEREKA MARSHALL, | * |
| Plaintiff, | * |
| | Case No. 1:20-cv-1565 |
| v. | * |
| WAL-MART REAL ESTATE BUSINESS TRUST, et al. | * |
| | * |
| Defendants. | |

\*\*\*\*\*

### MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. Proc. 56, Plaintiff, Tekera Marshall ("Marshall"), by her undersigned attorneys, hereby submits the following Memorandum of Points and Authorities in Opposition to the Motion for Summary Judgment filed by Defendants, Wal-Mart Real Estate Business Trust and Walmart, Inc. (collectively referred to as "WREB").

### I.   INTRODUCTION

This case arises out of an incident which took place at a Wal-Mart retail store located in Salisbury, Maryland on June 26, 2019. Specifically, Plaintiff was injured when she slipped on liquid which had accumulated on the floor near the fresh produce aisle. On April 9, 2021, WREB filed a Motion for Summary Judgment contending that undisputed evidence establishes that Defendants did not have actual or constructive notice that the liquid was on the floor, and that Plaintiff

was contributorily negligent. As set forth more fully below, Defendants' arguments ignore applicable law, rely upon disputed facts and, in certain instances, simply ignore the uncontradicted evidence developed during the course of discovery. Therefore, Defendants are not entitled to judgment in their favor as a matter of law, and the Motion for Summary Judgment should be denied in its entirety.

## II. UNDISPUTED FACTS

### A. FACTS REGARDING THE ACCIDENT

On June 26, 2019, Marshall entered the Food Lion store located at the property known as 409 N. Fruitland Boulevard, Salisbury, Maryland 21801 ("Premises") with her mother, Rosa Smith ("Smith"), and her daughter, Pariss Marshall ("Pariss"), for the purpose of going grocery shopping. *See* the Deposition of Tereka Marshall, relevant excerpts of which have been attached hereto as **EXHIBIT A** at 27:3-8, 28:3-5. Upon entering the Premises, Plaintiff, Smith, and Pariss began shopping for groceries and other household goods. *Id.* at 29:6-11. As Plaintiff approached the fresh produce section, she was asked to grab some bread by her mother, Smith. *Id.* at 30:2-8. As Plaintiff was returning to the fresh produce section with the bread, she slipped on a puddle of water causing her to fall to the ground and sustain injuries. *Id.* at 31:6-22, 32:1-9.

Surveillance video shows that two employees for Defendants were using tote boxes and shopping carts to stock the shelves in the leafy

greens and fresh produce aisle in the moments prior to Plaintiff's fall. *See* link to view surveillance video attached hereto as **EXHIBIT B**[1]. Furthermore, the video shows that the carts used by the employees to carry the boxes of food was positioned directly over the area where Plaintiff would eventually fall. *Id*. The surveillance video unequivocally supports Plaintiff's position that she did not walk in the exact area where the fall occurred prior to her fall. *Id.*, **EXHIBIT A** at 31:1-4. Immediately after Plaintiff's fall, the Asset Protection Manager for Defendants, Christopher Jones ("Jones"), was notified and took photographs of the area where the fall occurred. *See* Deposition of Christopher Jones, relevant excerpts of which have been attached hereto as **EXHIBIT C** at 22:2-5, 40:14-17.

At all times prior to her fall, Plaintiff was walking at a normal pace, looking straight ahead, and did not notice the liquid located on the floor of the aisle. **EXHIBIT A** at 31:12-22, 33:1-5, 33:19-21. As a result of her fall, Plaintiff sustained a torn meniscus in her left knee as well as multiple disc herniations in her back which required months of physical therapy and cortisone shots to repair. *Id*. at 83:21-22, 84:1-7.

---

[1] Plaintiff incorporates **EXHIBIT 6** to Defendants' Motion for Summary Judgment and will provide the same link to view the surveillance video as **EXHIBIT B.**

### B. FACTS REGARDING THE HAZARDOUS CONDITION

At the time of Plaintiff's fall, two WREB employees were using tote boxes and carts to stock the shelves in the fresh produce aisle. **EXHIBIT B, EXHIBIT C** at 28:13-17, 29:2-8, 36:3-15. Plaintiff, Smith, and Pariss testified that immediately after her fall, she noticed that her hands, legs, and pants were wet and saw a puddle of water and a green leafy substance laying on the ground. **EXHIBIT A** at 31:18-22, 32:1, 33:8-13, see Deposition transcript of Rosa Smith relevant portions attached hereto as **EXHIBIT D** at 20:6-19, Deposition transcript of Pariss Marshall relevant portions attached hereto as **EXHIBIT E** at 13:12-18. The surveillance video produced by Defendants, shows that two employees were stocking the fresh produce and leafy greens in the minutes prior to Plaintiff's fall. **EXHIBIT B.** Jones testified that he believed the top boxes on the stocking carts were filled with corn but could not identify what was in the boxes on the bottom of the carts. **EXHIBIT C** at 28:13-17, 29:2-8, 36:3-15. The surveillance video shows that the stocking carts were positioned directly over the area where Plaintiff fell, and that Plaintiff's fall occurred less than three (3) minutes after the employees finished stocking the shelves. **EXHIBIT B.** At no time from when the employees began stocking the fresh produce shelves until Plaintiff's fall did either of the employees inspect the area around the stocking cart. **EXHIBIT B.** Jones testified that all employees are required to inspect the area around the stocking cart before leaving

the area to confirm that no product or water had leaked onto the floor. **EXHIBIT C** at 64:2-9, 72:14-19, 73:3-5. At no time did Defendants provide any warning to Marshall of the hazardous condition, inspect the area to confirm the boxes on the stocking cart were not leaking, or clean the area so that it was suitable for patrons to walk on. *See* Defendants' Answers to Interrogatories attached hereto as **EXHIBIT F**.

### III. LEGAL ARGUMENT

#### A. STANDARD OF REVIEW

Summary judgment is properly granted to the moving party when the court determines that "no reasonable jury could find for the non-moving party on the evidence before it." *Perini Corp. v. Perini Construction, Inc.*, 915 F.2d 121, 124 (4th Cir. 1990), citing, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Any inferences from the underlying facts must be drawn in favor of the party opposing the motion, and when such inferences reveal a genuine dispute over a material fact summary judgment must be denied. *Tuck v. Henkel Corp.*, 973 F.2d 371 (4th Cir. 1992). When the nonmoving party makes a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the Motion for Summary Judgment must be denied. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

### B. THE FACTS ESTABLISH THAT WREB SHOULD HAVE KNOWN OF THE PRESENCE OF THE LIQUID ON THE FLOOR WHICH CAUSED MARSHALL TO FALL

The Court of Appeals of Maryland has adopted the formulation enunciated in the Restatement (Second) of Torts § 343 (1965), which sets forth the general duty that a private landowner, such as a retail store owner, owes to customers (invitees). *Deering Woods Condo. Ass'n v. Spoon*, 377 Md. 250, 263 (2003). Section 343 reads:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he:
>
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves from it, and
>
> (c) fails to exercise reasonable care to protect them from the danger.

Restatement (Second) of Torts § 343 (1965). In its Motion for Summary Judgment, WREB claims that there is no evidence to establish that it had actual or constructive notice of the hazardous condition which caused Marshall to fall. WREB does not dispute that the liquid which caused Marshall to slip constituted a dangerous condition, or that its employees were responsible for inspecting and maintain the aisleway where the fall occurred. Therefore, Marshall's Opposition will be limited to the issue of whether there is evidence to establish that

6

WREB knew or, by exercise of reasonable care should have known, of the dangerous accumulation of the liquid on the floor.

"It is the law in Maryland...that the proprietor of a store owes a duty to [an invitee] to exercise ordinary care to keep the premises in a reasonable safe condition and will be liable for injuries sustained in consequence of a failure to do so." *Rawls v. Hochschild, Kohn & Co.*, 207 Md. 113, 117 (1955). "The customer is entitled to assume that the proprietor will exercise reasonable care to ascertain the condition of the premises, and if he discovers any unsafe condition he will either take such action as will correct the condition and make it reasonably safe or give a warning of the unsafe condition." *Id.* at 117-118. The Court of Appeals holds:

> It is not necessary that there be proof that the [storeowner] had actual knowledge of the conditions creating the peril; it is enough if it appears that it could have discovered them by the exercise of ordinary care, so that if it is shown that the conditions have existed for a time sufficient to permit one, under a duty to know of them, to discover them, had he exercised reasonable care, his failure to discover them may in itself be evidence of negligence sufficient to charge him with knowledge of them.

*Moore v. American Stores Co.*, 169 Md. 541, 550-51 (1936). Whether there has been sufficient time for a business proprietor to discover and cure a dangerous condition is a question of fact to be resolved by the jury. *Rehn v. Westfield Am.*, 153 Md.App. 586, 593, 837 A.2d 981 (2003)(citations omitted).

### 1. THE AREA WHERE MARSHALL FELL WAS A KNOWN HAZARD.

WREB incorrectly argues that Maryland law requires Plaintiff to prove that Defendants had actual or constructive knowledge of how long the liquid which caused her to fall was on the floor. Such an argument is not applicable to a situation, like the case at bar, where the property owner has knowledge of a recurring hazard like water leaking out of tote boxes containing produce. A case on point is the Court of Appeals' decision in *Honolulu Limited v. Cain*, 244 Md. 590 (1966). In *Cain*, the court considered whether a shopping center could be held liable for ice which formed on a parking lot as a result of snow piles located near drains. *Id.* at 597-99. The court held that the factors creating the dangerous condition, i.e. water from snow piles flowing toward a drain, existed long enough to give the defendant both actual and constructive notice of the hazard. *Id.* at 599. The court reasoned:

> Nor do we accept the defendant's contention that the dangerous condition did not exist for a sufficient length of time to permit the inference that reasonable care would have led to its discovery. Although the ice on which Mrs. Cain slipped formed only 15 or 20 minutes before the accident, the defendant had knowledge that water would flow from melting snow across the lot. It knew also that it was likely on February evenings [sic] the water was apt to freeze. **In these circumstances, it is immaterial that the ice formed only a short time before the plaintiff fell on it. The jury could have found that reasonable care demanded that the wet area be salted, as a precaution, before the ice had formed.** This case clearly falls within the exception noted in *Rawls v. Hochschild, Kohn & Co.*, 207 Md. 113, 113 A.2d 405, 62 A.L.R.2d 124 (1955) and *Lexington Market Authority v. Zappala*, 233 Md. 444, 197 A.2d 147 (1964). **The jury could have found that the factors creating the dangerous condition existed long enough to give the defendant reasonable notice, actual or constructive, of its existence.** (emphasis supplied).

8

*Id.* 598-99.

The following undisputed facts demonstrate that WREB had knowledge that the hazardous condition which caused Plaintiff to fall was a known hazard:

- WREB knew that stocking fresh produce during business hours could create a hazardous condition on the floor of the store; **EXHIBIT C** at 64:2-9, 72:14-19, 73:3-5, **EXHIBIT G.**

- The wet wall section of the produce department is considered a "high risk" area of the store.

- WREB's policy is to have all employees inspect the area surrounding the stocking cart prior to exiting the area in order to identify any potential slip hazards. **EXHIBIT C** at 64:2-9, 72:14-19, 73:3-5.

- On the day of the accident, WREB's employees failed to inspect the area surrounding their stocking cart before the left the area; **EXHIBIT B.**

- The stocking cart was situated directly on top of the area where Plaintiff fell and was moved less than three (3) minutes prior to her fall. *Id.*

This evidence, when viewed in a light most favorable to Plaintiff, establishes that WREB was aware of the recurring hazard of water and/or other slip hazards falling off the stocking carts and onto the floor of the produce section, and required its employees to inspect the area surrounding the stocking cart to address this known hazard. **EXHIBIT C** at 64:2-9, 72:14-19, 73:3-5, **EXHIBIT G.** On the date of the accident, WREB's employees did not follow Defendants' own safety procedures when they failed to inspect the area directly undeath the stocking carts

which is a violation of WREB's internal policy. **EXHIBIT B, EXHIBIT C** at 64:2-9, 72:14-19, 73:3-5. Therefore, the evidence in this case demonstrates that Defendants had knowledge of the hazardous condition which caused Plaintiff to fall, and their Motion for Summary Judgment should be denied in its entirety.

### 2. EVIDENCE OF CONSTRUCTIVE KNOWLEDGE.

Assuming arguendo, the Plaintiff must prove that Defendants had either constructive or actual notice of the hazardous condition prior to her fall, the following undisputed evidence creates a jury question as to whether WREB had constructive knowledge of the liquid located on the floor of the produce aisle prior to Plaintiff's fall:

- The liquid which caused Plaintiff to fall was located directly under the stocking cart used by the two WREB employees. **EXHIBIT B**
- Less than three (3) minutes before Plaintiff's fall, two (2) WREB employees were stocking produce in the area where the fall occurred. *Id*.
- Fresh produce, like leafy greens, is trimmed and soaked in the back of the store prior to being placed in the tote boxes and stocked on the shelves. **EXHIBIT G**.
- Surveillance video shows that Defendants' employees failed to inspect the area surrounding the stocking carts prior to leaving the aisle. **EXHIBIT B.**
- Plaintiff, Smith, and Pariss testified that Plaintiff's hand, legs, and pants were wet after the fall. **EXHIBIT A** at 31:18-22, 32:1, 33:8-13, **EXHIBIT D** at 20:6-19, **EXHIBIT E** at 13:12-18.
- WREB was exclusively responsible for the maintenance, inspection, and cleanup of the aisleway. **EXHIBIT F**.

10

- Defendants do not contest that the liquid substance constituted a hazardous condition and caused Plaintiff to fall.
- After the fall occurred, photographs show water and a leafy green on the floor where Plaintiff's fall occurred. See photographs taken by Christopher Jones attached hereto as **EXHIBIT H.**

These facts indicate that the liquid which caused Plaintiff to fall originated from a tote box being used by Defendants' employees prior to the fall. Video evidence shows that Defendants' employees positioned the stocking carts directly over top of the area where Plaintiff's fall occurred and were stocking fresh produce just minutes prior to her fall. **EXHIBIT B.** The surveillance video further shows that no patrons walked through the exact spot where Plaintiff fell in the time between when the WREB employees moved the stocking carts and Plaintiff's fall. *Id.* Furthermore, the Asset Protection Manager for Defendants, Jones, testified that the employees were required to inspect the area after they were finished stocking the produce, but failed to do so. **EXHIBIT C** at 64:2-9, 72:14-19, 73:3-5. Specifically, Jones stated that the employees need to "make sure you clean up the surrounding area before you leave" and that he would have expected the employees to inspect the area after they were done. *Id.* Therefore, it is for the jury to determine the factual issue of constructive notice. *Rehn v. Westfield Am.*, 153 Md.App. 586, 593 (2003)(citations omitted).

WREB contends that there is no evidence suggesting that Defendants had constructive notice of the liquid on the floor because Smith testified that prior to the fall, she saw a female standing in the leafy produce section of the store that was shaking her hands like they were wet. Specifically, Defendants contend that the water Plaintiff slipped only amounted to a few drops and may have come from the woman near the leafy produce who was shaking her hands. In doing so, Defendants mischaracterize Smith's testimony and fail to address the undisputed fact that Plaintiff fell approximately ten (10) feet away from the leafy green section of the produce department. Immediately after Plaintiff's fall, Jones inspected the area where the fall occurred and testified that it was ten (10) feet away from the wet wall where the leafy greens were stored. **EXHIBIT C** at 58:15-17. Furthermore, when asked if she saw water on the female patron's hands, Smith responded "No". **EXHIBIT D.** Jones' and Smith's testimony directly contradict Defendants' assertion that the water that caused Plaintiff to slip came from a customer shaking her hands in an area of the store that was at least ten (10) feet from where Plaintiff fell. *Id.*, **EXHIBIT C** at 58:15-17. Furthermore, Defendants' contention that a small amount of liquid was on the floor when Plaintiff fell is demonstrably false. Plaintiff, Smith, and Pariss testified that Plaintiff's hand, leg, and pants were all wet after she fell. **EXHIBIT A** at 31:18-22, 32:1, 33:8-13, **EXHIBIT D** at 20:6-19, **EXHIBIT E** at 13:12-18. Moreover, Jones testified that he took the

12

photographs of the area where Plaintiff fell after her fall and had no knowledge of the amount of water present on the floor prior to the fall. **EXHIBIT C** at 71:8-16.

Defendant further contends that in order to prove constructive notice, Plaintiff must establish that the hazardous condition was present for more than a few hours. In doing so, Defendant fails to cite a single reported Maryland or local Federal case to support its contention. It is well established that whether WREB had sufficient time to discover that the water was on the floor of the Premises is a question of fact to be determined by the jury. *Rehn v. Westfield America*, 153 Md.App. 586, 593 (2003); *Rawls v. Hochschild, Kohn & Co.*, 207 Md. at 118. Defendants further rely on *Maans v. Giant of Maryland, LLC*, 161 Md.App. 620 (2005) and *Lusby v. Baltimore Transit Co.*, 195 Md. 118 (1950) to support their contention that they did not have constructive notice of the hazardous condition. These cases are readily distinguishable from the case at bar. Specifically, in *Maans*, the Plaintiff slipped on liquid located near the cashier's station in the front of the store. *Maans* at 624-25. In granting the Motion for Summary Judgment, the Court of Special Appeals of Maryland held "appellant failed to produce any evidence that had giant made reasonable inspections prior to the accident it would have discovered the water on the floor in time to prevent the accident. This is fatal to her argument that Giant is liable." *Id.* at 632. In *Lusby,* the Court of Appeals upheld

13

the granting of a Motion for Summary Judgment because there was no evidence produced to indicate it was part of the bus driver's duty to inspect the aisle of the bus for slip hazards. *Lusby* at 123. In the case at bar, Defendants' employee, Jones, testified that the two employees stocking the produce were required to inspect the area surrounding the stocking carts. **EXHIBIT C** at 64:2-9, 72:14-19, 73:3-5. Furthermore, video evidence shows that the puddle of water that caused Plaintiff to fall was located directly under the stocking carts used by the employees less than three (3) minutes prior to Plaintiff's fall. **EXHIBIT B.** Therefore, Defendants had a duty to inspect the area where the hazardous condition occurred and could have identified the puddle of water and leafy green through a reasonable inspection. **EXHIBIT C** at 64:2-9, 72:14-19, 73:3-5.

All of these facts, when applied to the applicable law, create a jury question as to whether WREB knew or should have known of the existence of the liquid that caused Plaintiff's fall prior to the fall. Therefore, WREB is not entitled to judgment as a matter of law, Defendants' Motion for Summary Judgment should be denied.

### 3. EVIDENCE OF ACTUAL NOTICE

Not only does the evidence establish that WREB had at least constructive knowledge of the hazardous condition and that it failed to warn Plaintiff, the following evidence shows that WREB had actual knowledge of the hazard:

14

- WREB's employees were required to inspect the aisle for hazardous conditions. *Id.*
- Video evidence shows that two WREB employees were stocking shelves in the area where the Plaintiff fell just prior to her fall. **EXHIBIT B.**
- The WREB employees were stocking produce which is soaked and washed in the back prior to being brought onto the floor. **EXHIBIT G.**
- Video evidence shows that no patrons walked directly over the area where Plaintiff fell in the three (3) minutes after the employees left and the fall. **EXHIBIT B.**
- Defendants do not dispute that the liquid created a hazardous condition.
- The amount of liquid on the floor was large enough to cover Plaintiff's hand, leg, and clothing and was located less than a foot away from two WREB employees. **EXHIBIT A** at 31:18-22, 32:1, 33:8-13, **EXHIBIT D** at 20:6-19, **EXHIBIT E** at 13:12-18.

These facts would support a jury determination that WREB's employees created and had actual knowledge of the liquid located on the floor prior to Plaintiff's fall and failed to take any steps to clean the hazard, warn Plaintiff, or direct pedestrian traffic away from the area of the floor where the hazard was located. Therefore, the evidence in this case demonstrates that Defendants had both actual and constructive knowledge of the hazardous condition which caused Plaintiff to fall. As such, Defendants' Motion for Summary Judgment should be denied in its entirety.

### C. PLAINTIFF WAS NOT CONTRIBUTORILY NEGLIGENT

"Contributory negligence connotes a failure to observe ordinary care for one's own safety. 'It is the doing of something that a person

of ordinary prudence would not do, or the failure to do something that a person of ordinary prudence would do, under the circumstances.'" *Smith v. Warbasse,* (1987)(quoting *Menish v. Polinger Co.,* 277 Md. 553, 559, (1976)). See also *CIGNA Property and Cas. Cos. v. Zeitler,* 126 Md.App. 444, 488, (1999). Contributory negligence "'occurs whenever the injured person acts or fails to act in a manner consistent with the knowledge or appreciation, actual or implied, of the danger or injury that his or her conduct involves.'" *Campbell v. Montgomery County Bd. of Educ.,* 73 Md.App. 54, 64, (1987)(quoting Gilbert, *Maryland Tort Law Handbook,* § 11.4.1), *cert. denied,* 311 Md. 719, (1988). As the Court of Special Appeals explained in *McSlarrow v. Walker,* 56 Md.App. 151, 161, (1983):

> Contributory negligence as a matter of law requires a finding that the negligent act of the plaintiff ... relied upon must be prominent, decisive and one about which ordinary minds would not differ in declaring it to be negligence. *Yockel v. Gerstadt,* 154 Md. 188, 140 A. 40 (1927). The standard of care to be used in measuring contributory negligence is the conduct of an ordinarily prudent person under similar circumstances; and even if the act done turns out to be an error of judgment, this alone does not make the act negligent if an ordinarily prudent person may have made the same error. *Sanders v. Williams,* 209 Md. 149, 120 A.2d 397 (1955).

Plaintiff cannot be deemed to be contributorily negligent based upon the following evidence:

- Plaintiff fell while walking in the aisle of the store, i.e., an area designated for foot traffic. **EXHIBIT B.**

- Plaintiff was walking normally and looking straight ahead at the time of her fall. **EXHIBIT A** at 33:19-21.

16

- Prior to her fall Plaintiff did not see the liquid located on the floor of the aisle. *Id.* at 31:12-22, 33:1-5.

- No warning signs were visibly posted regarding the hazardous accumulation of the liquid on the floor. **EXHIBIT F**.

- No verbal warnings were given to Plaintiff regarding the hazardous accumulation of the liquid on the floor. *Id.*

- The aisle where Plaintiff fell contained numerous display shelves containing merchandise intended to be sold to patrons of WREB. **EXHIBIT B.**

The aforementioned evidence demonstrates that Plaintiff exercised reasonable caution as she walked through the Wal-Mart retail store and that her actions did not cause her to fall. Moreover, Defendant's argument for contributory negligence was addressed by the Court of Special Appeals of Maryland in *Diffendal v. Kash and Karry Service Corp.*, 74 Md.App. 170 (1988). Specifically, the Court of Special Appeals held that:

> "Additionally, there is evidence that the display and the placing of the impulse items were intended to attract and keep the customer's attention at eye level. When a merchant entices a customer's eyes away from a hazardous condition, we do not think he should be heard to complain when his efforts succeed. Likewise, when the designs of the merchant have the desired effect upon a customer, we cannot conclude as a matter of law that the customer was contributorily negligent in not looking down at the floor."

*Id.* at 175-176. Like in *Diffendal,* Defendants placed merchandise on the shelves located in the produce aisle where the hazardous condition which caused Plaintiff to fall was located. **EXHIBIT B.** The aforementioned

17

evidence and case law demonstrates that Plaintiff exercised reasonable caution as she walked through the Wal-Mart retail store and that she did not engage in any unreasonable conduct which would have caused her to fall. **EXHIBIT A** at 33:19-21. As such, Plaintiff cannot be found contributorily negligent as a matter of law and Defendants' Motion for Summary Judgment should be denied in its entirety.

## IV. CONCLUSION

Based upon the evidence and the applicable legal authorities identified in this Opposition Memorandum of Law, Plaintiff, Tereka Marshall, respectfully requests that the Court deny the Motion for Summary Judgment filed by Defendants in its entirety.

Respectfully submitted,

_____
Thomas C. Costello (Fed. Bar No. 22978)
Matthew T. Holley (Fed Bar No. 19001)
Costello Law Group
409 Washington Avenue
Suite 410
Towson, Maryland 21204
(410) 832-8800

Attorneys for Plaintiff,
Tereka Marshall

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 6th day of May, 2021, a copy of the foregoing was served via electronic mail to:

>Jennifer M. Alexander
>McNamee, Hosea Jernigan Kim
>Greenan & Lynch, P.A.
>888 Bestgate Road
>Suite 402
>Annapolis, Maryland 21401
>
>Attorneys for Defendants,
>Wal-Mart Real Estate Business Trust and
>Walmart, Inc.

_____
Matthew T. Holley